UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRITTANY MONTANA,

                              Plaintiff,

     v.

CITY OF MOUNT VERNON, MOUNT
VERNON FIRE DEPARTMENT,

                              Defendants.

---

No. 21-CV-260 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Daniel J. Chavez, Esq.
Erica Tracy Kagan, Esq.
The Kurland Group
New York, NY
*Counsel for Plaintiff*

Marc S. Oxman, Esq.
Julie Pechersky, Esq.
Oxman Law Group, PLLC
White Plains, NY
*Counsel for Defendants*

Anthony Odorisi, Esq.
Hartsdale, NY
*Counsel for Defendants*

Brian G. Johnson, Esq.
The City of Mount Vernon
Mount Vernon, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Brittany Montana ("Plaintiff") brings this Action against the City of Mount Vernon and

the City of Mount Vernon Fire Department ("MVFD") (collectively, "Defendants"), alleging

discrimination on the basis of sex, which resulted in a failure to hire Plaintiff as a firefighter with

MVFD in favor of solely male applicants despite Plaintiff's eligibility for the position, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq., and the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, et seq. (*See generally* Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion for Summary Judgment (the "Motion").  (*See* Not. of Mot. (Dkt. No. 51).)  For the following reasons, Defendants' Motion is denied.

## I.  Background

### A.  Factual Background

The following facts are taken from the Parties' statements pursuant to Local Rule 56.1, (*see* Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 57); Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") (Dkt. No. 66)), and the admissible evidence submitted by the Parties.  The facts are recounted "in the light most favorable to" Plaintiff, the non-movant.  *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021).  The facts as described below are in dispute only to the extent indicated.[1]

---

[1] Where the Parties "identify disputed facts but with semantic objections only or by asserting irrelevant facts, which do not actually challenge the factual substance described in the relevant paragraphs, the Court will not consider them as creating disputes of fact."  *New Jersey v. N.Y.C. Dep't of Educ.*, No. 18-CV-6173, 2021 WL 965323, at *2 n.1 (S.D.N.Y. Mar. 15, 2021) (alteration adopted) (internal quotation marks and citation omitted); *see also Nimkoff v. Drabinsky*, No. 17-CV-4458, 2021 WL 4480627, at *1 n.2 (E.D.N.Y. Sept. 30, 2021) ("[T]o the extent a party's Rule 56.1 statement improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party without specifically controverting those facts [with admissible evidence], the [c]ourt has disregarded the statement." (alteration adopted) (internal quotation marks and citation omitted)); *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) ("Many of [the] [p]laintiff's purported denials—and a number of [the] plaintiff's] admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by [the] [d]efendants, often speaking past [the] [d]efendants' asserted facts without specifically controverting those same facts. . . .  [A] number of [the] [p]laintiff's purported denials quibble with [the] [d]efendant['s] phraseology, but do not address the factual substance asserted by [the] [d]efendants.").

Plaintiff is a woman, who engaged in the application process to become a firefighter in the MVFD.  (*See* Defs.' 56.1 ¶¶ 1, 2, 4; Pl.'s 56.1 ¶¶ 1, 2, 4.)  Defendant City of Mount Vernon is a municipality duly incorporated under the laws of the State of New York, and Defendant MVFD is an agency of the City of Mount Vernon.  (Compl. ¶¶ 13–14.)

### 1. Appointment Criteria

To be eligible for appointment as a firefighter in the MVFD an applicant must: (1) not be less than seventeen and a half years of age on the date of the examination, with eligibility for appointment beginning when an applicant reaches their eighteenth birthday; (2) possess a valid New York State Driver's License; and (3) be a resident of Westchester County for at least three months immediately preceding the date of the written examination and continuously up to and including the date of appointment.  (Compl. ¶¶ 18–19, Ex. C; Decl. of Brian G. Johnson in Supp. of Mot. ("Johnson Decl.") Ex. A at 1 (Dkt. No. 53).)  There are no educational or experiential requirements for this position.  (Compl. ¶ 20, Ex. C; Johnson Decl. Ex. A at 1.)

If a candidate meets these threshold requirements, the candidate must take the MVFD firefighter examination, which consists of three parts: (1) a written examination; (2) a physical strength/agility test (the "Physical Test"); and (3) a medical examination.  (Defs.' 56.1 ¶ 5; Johnson Decl. Ex. A at 2.)  If an applicant receives a "pass" on the written examination, the candidate then qualifies to take the Physical Test.  (Defs.' 56.1 ¶ 6; Johnson Decl. Ex. A at 2.)  An applicant's grade on the Physical Test determines a ranking on an "eligible for appointment" list.  (Defs.' 56.1 ¶ 7; Johnson Decl. Ex. A at 3.)  In order to qualify for the "eligibility list" to be appointed as a firefighter, a candidate must participate in the Physical Test.  (Defs.' 56.1 ¶ 9; Johnson Decl. ¶ 10, Ex. A at 2.)

The Physical Test consists of seven parts:

1. Climb an aerial ladder extended 70 feet in the air; 2. Remove, place on ground and then restore to its proper position on a fire truck, a 14-foot extension ladder weighing approximately 30 pounds; 3. Use a rope to hoist a 50-pound weight to platform 20 feet high and then lower it to the ground; 4. Use a rope to pull a dry section of hose weighing approximately 52 pounds, from the ground to the top of the drill tower which is approximately 64 feet tall; 5. 60-yard unimpaired sprint followed by a run pulling a 90-foot section of hose to the starting place; 6. Carry a 100-foot section of hose, weighing approximately 52 pounds, from the ground to the 5th floor of the drill tower and back down to the starting place; 7. Run, from a standing start, 45 feet and scale a wall approximately 5 feet high.

(Johnson Decl. Ex. A at 3; Compl. ¶ 30.)  If a candidate is not physically able to participate in the Physical Test on the scheduled date, the candidate may request the "Alternate Test Date . . . [i]f needed, [by] call[ing] the Civil Service Office . . . for the alternate test date policy."  (Pl.'s 56.1 ¶ 9; Johnson Decl. Ex. A at 4.)  Finally, a candidate must submit to a medical exam to confirm fitness for duty if and when the candidate is preliminarily chosen to be hired from the eligibility list.  (Johnson Decl. ¶ 4, Ex. A at 2.)

### 2. The 2014 Examination

Plaintiff first applied for the position of a firefighter in the MVFD in 2014.  (Defs.' 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.)  Plaintiff sat for the March 8, 2014 written examination, which she passed. (Defs.' 56.1 ¶ 11.)  Plaintiff then took the Physical Test and was ranked 119 on the eligibility list for the 2014 test.  (*Id.* ¶¶ 12–13.)  Plaintiff notes that the eligibility list on which she was ranked 119 for hiring was open and active from 2015 to 2019, expiring on April 3, 2019.  (Pl.'s 56.1 ¶ 13; Decl. of Erica T. Healey-Kagan in Opp'n to Mot. ("Healey-Kagan Decl.") Ex. 4 at 1 (Dkt. No. 67).)  Individuals were appointed to the position of firefighter for the MVFD from this eligibility list as late as April 20, 2018.  (Healey-Kagan Decl. Ex. 4.)

It is undisputed that Plaintiff made no complaints in writing to Defendants related to the 2014 test and/or Defendants' failure to hire her related to the 2014 test in 2014, 2015, 2016 or 2017.  (Defs.' 56.1 ¶ 14.)  However, Plaintiff asserts that she voiced her complaints to her father,

a high-ranking official in the MVFD, who reported Plaintiff's complaint to other civil service

officers.  (Pl.'s 56.1 ¶ 14; Healey-Kagan Decl. Ex. 9 at 46:4–12.)

### 3. Plaintiff's Accident

On or about September 12, 2017, Plaintiff was in a motor vehicle accident in which she

suffered a concussion and neck injuries.  (Defs.' 56.1 ¶ 16.)  Plaintiff was prescribed and

underwent physical therapy following the accident.  (*Id.* ¶ 17.)  Plaintiff attended a February 21,

2018 medical appointment with Associated Neurologists, P.C. at which she reported that her

neck pain had worsened.  (*Id.* ¶ 18.)  At this same appointment, Plaintiff was prescribed:

"[l]imited physical activity, no contact sports or any other activity that could put her at risk of a

concussion, especially as she remains symptomatic, however light aerobic exercise was

encouraged."  (*Id.* ¶ 19.)

### 4. The 2018 Examination

Plaintiff took and passed the written portion of the 2018 test on April 21, 2018.  (*Id.*

¶ 20.)  However, as of April 2018, Plaintiff was not medically cleared to participate in strenuous

physical activity.  (*Id.* ¶ 21.)  Between April 21, 2018, and September 23, 2018, Plaintiff

received a notification from Defendants informing her that she passed the written portion of the

2018 test and that the practice Physical Test would be held on September 23, 2018 and the

Physical Test itself would be held on November 4, 2018.  (*Id.* ¶ 22.)

Plaintiff attended a June 13, 2018 medical appointment with Associated Neurologists,

P.C. at which the medical professional examining her determined that she "remained

symptomatic," and informed her that "once she is symptom free for more than 24 hours, she can

gradually start to return to her normal physical activity."  (*Id.* ¶ 23.)  On October 31, 2018,

Plaintiff called Associated Neurologists, P. C. and requested a "note stating she is unable to [do]

heavy physical activity, she has a fire dept. physical exam this weekend, and she cannot go this weekend." (*Id.* ¶ 24.)

By letter dated February 18, 2020, Defendants notified Plaintiff of a practice Physical Test scheduled for March 29, 2020, and the actual Physical Test scheduled for May 31, 2020. (*Id.* ¶ 25.) However, Plaintiff never participated in and/or took any Physical Test other than the one in 2014. (*Id.* ¶ 26; Pl's 56.1 ¶ 26.) Plaintiff never qualified for the "eligibility list" related to the 2018 test because she never took the Physical Test. (Defs.' 56.1 ¶ 27.) Plaintiff claims that this meant her eligibility to be hired as a MVFD firefighter expired on April 3, 2019, when the eligibility list from 2014 test expired. (Pl's 56.1 ¶ 27.)

### 5. Plaintiff's EEOC Complaint

On June 26, 2018, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (the "EEOC Charge"). (Johnson Decl. Ex. K; Defs.' 56.1 ¶ 29; Pl.'s 56.1 ¶ 29). Plaintiff claims that her "EEOC Charge was based in part on Defendants' failure to hire her in April 2018, as well as Defendants' continued use of a discriminatory hiring policy which effectively bars female applicants from employment as an MVFD firefighter." (Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem.") at 3 (Dkt. No. 65); *see also* Johnson Decl. Ex. K). On July 2, 2019, the EEOC "determined that there is reasonable cause to believe [Defendants] discriminated against [Plaintiff] and a class of similarly situated females because of sex." (Healey-Kagan Decl. Ex. 8 at 2.) As a result of the EEOC's determination, Plaintiff commenced this Action. (*See* Compl.)

### B.  Procedural History

Plaintiff filed her Complaint on January 12, 2021. (*See id.*) On May 20, 2021, Defendants filed their Answer. (*See* Answer (Dkt. No. 12).) The Parties attempted to mediate on July 15, 2021, (*see* Dkt. Entry for July 15, 2021), after which they submitted a Joint Letter

Motion to the Court, explaining that the continuation of mediation would be more productive after completing certain discovery, (Dkt No. 14). Accordingly, the Court entered a Case Management Order on September 17, 2021, (*see* Dkt. No. 22), and the Parties proceeded to discovery, (*see* Dkt. Nos. 30–57).

On February 9, 2022, the Parties submitted a Joint Letter Motion, requesting an extension of time to complete discovery given the "significant progress towards settlement[,]" which the Court granted. (Dkt. Nos. 23–24). On March 2, 2022, the Parties had a subsequent mediation conference, (*see* Dkt. Entry for Mar. 2, 2022), after which they submitted a Joint Letter Motion to the Court, seeking an adjournment of certain deadlines in the Case Management Order to continue discovery and to make progress towards settlement, (Dkt. No 25). The Court granted the extension but noted that there would be no further extensions of the discovery deadlines. (Dkt. No. 26.)

On April 24, 2023, while discovery was ongoing, Defendants filed a pre-motion letter to the Court requesting permission to move for summary judgment on the basis that Plaintiff failed to exhaust her administrative remedies, which the Court granted. (Dkt. Nos. 41–42.) On May 24, 2023, Defendants filed their Motion, supporting papers, and Rule 56.1 Statement. (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 55); Defs.' 56.1; Johnson Decl.) On June 26, 2023, Plaintiff filed her Opposition, supporting papers, and Rule 56.1 Statement. (*See* Pl.'s Mem.; Healey-Kagan Decl.; Pl.'s 56.1.) On July 11, 2023, Defendants filed their Reply. (*See* Defs.' Reply Mem. of Law in Further Supp. of Mot. ("Defs.' Reply") (Dkt. No. 72); Decl. of Julie Pechersky Plitt in Further Supp. of Mot. ("Plitt Decl.") (Dkt. No. 73).)

## II.  Discussion

### A.  Standard of Review

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same).  "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia*, 17 F.4th at 354; *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) (same).  "It is the movant's burden to show that no genuine factual dispute exists."  *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004); *see also Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (same).

"However, when the burden of proof at trial would fall on the non[-]moving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration adopted) (internal quotation marks and citation omitted); *see also U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of J.P. Morgan Chase Com. Mortg. Sec. Corp., Multifamily Mortg. Pass-Through Certificates, Series 2017-SB42 v. 160 Palisades Realty Partners LLC*, No. 20-CV-8089, 2022 WL 743928, at *3 (S.D.N.Y. Mar. 10, 2022) (same).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that h[er] allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v.*

*County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)); *see also Jennifer Fung-Schwartz, D.P.M, LLC v. Cerner Corp.*, No. 17-CV-233, 2023 WL 6646385, at *3 (S.D.N.Y. Oct. 12, 2023) (same), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks and citation omitted); *see also Kollias v. Univ. of Rochester*, No. 18-CV-6566, 2023 WL 5608868, at *4 (W.D.N.Y. Aug. 30, 2023) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading." (quoting *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009))).  Indeed, "[w]hile summary judgment must be granted with caution in employment discrimination actions, . . . a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *see also Streichert v. Town of Chester*, No. 19-CV-7133, 2022 WL 4449305, at *4 (S.D.N.Y. Sept. 23, 2022) ("It is the law of this Circuit that summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact, and may be appropriate even in the fact-intensive context of discrimination cases." (alteration adopted) (quoting *Schiano v. Quality Payroll Sys., Inc*., 445 F.3d 597, 608 (2d Cir. 2006))).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at *12 (S.D.N.Y. Sept. 29, 2023) (quoting *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014)).  "At this stage, 'the role of the court is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" *U.S. Sec. & Exch. Comm'n v. Amah*, No. 21-CV-6694, 2023 WL 6386956, at *8 (S.D.N.Y. Sept. 28, 2023) (alteration adopted) (quoting *Brod v. Omya*, 653 F.3d 156, 164 (2d Cir. 2011)). Therefore, "a court's goal should be 'to isolate and dispose of factually unsupported claims.'" *Id.* (quoting *Geneva Pharms. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

When ruling on a motion for summary judgment, a district court should "consider only evidence that would be admissible at trial." *Latimer v. Annucci*, No. 21-CV-1275, 2023 WL 6795495, at *3 (S.D.N.Y. Oct. 13, 2023) (citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 746 (2d Cir. 1998)). "Where a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *Mozzochi v. Town of Glastonbury*, No. 21-CV-1159, 2023 WL 3303947, at *3 (D. Conn. May 8, 2023) (alteration adopted) (quoting Fed. R. Civ. P. 56(c)(4)); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (same); *see also E. Fishkill Fire Dist. v. Ferrara Fire Apparatus, Inc.*, No. 20-CV-576, 2023 WL 6386821, at *11 (S.D.N.Y. Sept. 28, 2023) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ." (citation omitted)); *Baity*, 51 F. Supp. 3d at 419 (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (internal quotation marks and citation omitted)).

As a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Martinez v. Pao's Cleaning, Inc.*, No. 16-CV-6939,

2018 WL 6303829, at *2 (E.D.N.Y. Dec. 3, 2018) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005)).  However, although witness credibility is usually a question of fact for the jury, *Yu Zhang v. Sabrina USA Inc.*, No. 18-CV-12332, 2021 WL 1198932, at *3 (S.D.N.Y. Mar. 30, 2021), "[b]road, conclusory attacks on the credibility of a witness without more [are] insufficient to raise a genuine issue of material fact that would defeat a motion for summary judgment, *Sec. & Exch. Comm'n v. Airborne Wireless Network*, No. 21-CV-1772, 2023 WL 5938527, at *6 (S.D.N.Y. Sept. 12, 2023) (internal quotation marks and citation omitted); *see also Ezuma v. City Univ. of N.Y.*, 665 F. Supp. 2d 116, 128 (E.D.N.Y. 2009) ("If the moving party has made a properly supported motion for summary judgment, the plaintiff may not respond simply with general attacks upon the defendant's credibility." (alterations adopted) (internal quotation marks and citation omitted)).  As such, "when opposing a motion for summary judgment, the non-moving party may not respond simply with general attacks upon the declarant's credibility, but rather must identify affirmative evidence from which a jury could find that the non-moving party has carried its burden of proof."  *Moritz v. Town of Warwick*, No. 15-CV-5424, 2017 WL 4785462, at *8 (S.D.N.Y. Oct. 19, 2017) (alterations adopted) (internal quotation marks and citation omitted); *see also Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 181 (E.D.N.Y. 2015) ("'Although credibility assessments are improper on a motion for summary judgment,' a court may be justified in dismissing a claim when the 'plaintiff's version of the events is in such discord with the record evidence as to be wholly fanciful.'" (quoting *Pulliam v. Lilly*, No. 07-CV-1243, 2010 WL 935383, at *5 (E.D.N.Y. Mar. 11, 2010))).

### B.  Analysis

Plaintiff brings two causes of action against Defendants, alleging that "Defendants' conduct in failing to provide equal employment opportunity to women, including failing to hire

Plaintiff, as well as failing to provide adequate facilities and accommodations to women, including Plaintiff, without justification, was impermissibly motivated by Plaintiff's sex[,]" in violation of Title VII and the NYSHRL, and "occurred under circumstances giving rise to an inference of discriminatory intent." (Compl. ¶¶ 61–70.) Defendants seek summary judgment on all of Plaintiff's claims, arguing that Plaintiff's claims fail because "they are time[]barred." (Defs.' Mem. at 1, 5–10.)[2]

1. Title VII

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "In adopting this language, 'Congress intended to prohibit all practices in whatever form which create inequality in employment opportunity due to discrimination on the basis of race, religion, sex, or national origin.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 269 (2d Cir. 2023) (quoting *Chambers v. District of Columbia*, 35 F.4th 870, 882 (D.C. Cir. 2022) (Walker, J., concurring in part)).

---

[2] Defendants separate Plaintiff's claims as ones related to the 2014 exam and ones related to the 2018 exam. Their timeliness argument relates to the claims Defendants believe to have arisen from the 2014 exam. Separately, Defendants argue in connection to claims arising from the 2018 exam that Plaintiff cannot make a prima facie case of discrimination, or that such a showing is rebutted, and that Plaintiff does not have standing to bring claims regarding the 2018 exam. (Defs.' Mem. at 10–16.)

However, Defendants' separation of Plaintiff's claims into ones related to the 2014 exam and others to the 2018 exam is misplaced. Such a distinction is not one Plaintiff pleads. Rather, Plaintiff is alleging that Defendants engaged in a continuous discriminatory practice in violation of Title VII and the NYSHRL, from which Plaintiff suffered from 2015 to 2019. Accordingly, the Court finds it unnecessary to analyze Plaintiff's claims separately in relation to the two exams. Rather, the Court need only evaluate the timeliness of Plaintiff's one Title VII claim and one NYSHRL claim as they relate to the eligibility list on which her name appears and was active from 2015 to 2019. Moreover, the Court need not address Defendants' arguments related only to the 2018 exam, including the arguments rebutting the prima facie case of discrimination, and standing, because Plaintiff does not allege any claims specifically and uniquely related to the 2018 exam.

Title VII claims are evaluated under "the three-step burden shifting analysis of" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400-01 (2d Cir. 1998)). For refusal to hire claims arising under Title VII, in order to establish a prima facie case of discrimination, a plaintiff must show: "(1) she was within [a] protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Streichert*, 2022 WL 4449305, at *6 (internal quotation marks and citation omitted); *see also Chudnovsky v. Prudential Sec. Inc.*, No. 98-CV-7753, 2000 WL 1576876, at *7 (S.D.N.Y. Oct. 23, 2000) (same); *Jones v. N.Y.C. Dep't of Educ.*, 286 F. Supp. 3d 442, 449 (E.D.N.Y. 2018) (applying test to claim of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.). The burden at this stage is minimal, but "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive." *Risco v. McHugh*, 868 F. Supp. 2d 75, 98–99 (S.D.N.Y. 2012) (citing *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x. 55 (2d Cir. 2002)); *see also Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) ("The burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." (internal quotation marks and citation omitted)).

However, before bringing a suit for employment discrimination in federal court, a plaintiff must first timely file a discrimination charge with the EEOC. To be timely, a claim for discrimination under Title VII must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Shields v. NYC Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 161 (E.D.N.Y. 2020) (citing *Pikulin v. City Univ. of N.Y.*,

176 F.3d 598, 599 (2d Cir. 1999) (per curiam)); *see also Zaja v. SUNY Upstate Med.*

*Univ./Upstate Healthcare Ctr.*, No. 20-CV-337, 2022 WL 16834054, at *3 (N.D.N.Y. Nov. 9,

2022) (noting that New York's "State Division of Human Rights makes New York a . . . deferral

state for Title VII purposes," and therefore, discrimination claims must be filed with the EEOC

within 300 days when the employee knew of should have known of the alleged adverse

employment action (internal quotation marks and citation omitted)).   "The limitations periods,

while guaranteeing the protection of the civil rights laws to those who promptly assert their

rights, also protect employers from the burden of defending claims arising from employment

decisions that are long past." *Rusis v. Int'l Bus. Machs. Corp.*, 529 F. Supp. 3d 178, 224 n.44

(S.D.N.Y. 2021) (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 256–57 (1980)).

Defendants argue that summary judgment is warranted because Plaintiff did not timely

file a charge of discrimination with the EEOC.  (Defs.' Mem. at 5–6.)  According to Defendants,

the timeliness of a discrimination claim is to be measured from the date the claimant had notice

of the allegedly discriminatory action, here the failure to hire.  (*Id.* at 5.)  Specifically,

Defendants contend Plaintiff should have filed her EEOC Charge within 300 days of first

learning that Defendants did not hire Plaintiff from the eligibility list created as a result of the

2014 exam.  (*Id.*)  They claim that Plaintiff first learned that she was not hired sometime

following the 2014 exam when Plaintiff expressed that she "was the number one female on the

[eligibility] list," but "was not happy . . . how low the first female was [ranked] compared to

men," (*id.*), and was not invited to "take the medical exam related to the 2014 [t]est, as only

applicants that were hired would take the medical exam," (*id.* at 6)  Thus, because Plaintiff did

not file her EEOC Charge until June 26, 2018, a date outside of the 300-day period following the

Defendants' alleged failure to hire her, Defendants maintain that her challenge is time barred.

In response, Plaintiff argues that her charge was timely filed because the 300-day period accrued from "the last instance Defendants used the eligibility list on which Plaintiff's name appeared but failed to hire Plaintiff from that list." (Pl's Mem. at 4.) In particular, Plaintiff claims that after passing the 2014 exam, she was placed on the eligibility list that was valid from 2015 to 2019 and was used to make hiring decisions as late as April 2018. (*Id.* at 8–9.) Eight men were hired off the eligibility list on which Plaintiff was listed on April 20, 2018. (*Id.*) As a result of Defendants' failure to hire Plaintiff in April 2018, Plaintiff filed her charge of discrimination with the EEOC on June 26, 2018, sixty-seven days later. (*Id.* at 8.) Accordingly, Plaintiff contends that her charge was timely. (*Id.* at 7–8.) For the following reasons, the Court agrees with Plaintiff.

In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court held that the word "practice," in the context of a discriminatory practice, refers to "a discrete act or single 'occurrence,'" and that a "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110–11. Moreover, the Court explained that ordinarily, for plaintiffs alleging unlawful discrimination or retaliation, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113–15.

However, an exception to the 300-day rule applies if the discrimination constitutes a continuing violation. *Philbert v. City of New York*, No. 21-CV-3119, 2022 WL 94574, at *11 (S.D.N.Y. Jan. 7, 2022); *see also Deravin v. Kerik*, No. 00-CV-7487, 2007 WL 1029895, at *4 (S.D.N.Y. Apr. 2, 2007). A continuing violation may be found, "where there is evidence of specific discriminatory practices, such as the repeated use of discriminatory seniority lists or

employment tests, . . . and where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Lyons v. N.Y. Life Ins. Co.*, No. 20-CV-3120, 2022 WL 837202, at *11 (S.D.N.Y. Mar. 21, 2022) (internal quotation marks and citation omitted); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996); *Perard v. Jamaica Hosp. Med. Ctr.*, No. 18-CV-6661, 2020 WL 5633153, at *9 (E.D.N.Y. Sept. 20, 2020).  If a continuing violation is found, a court must then "consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred." *Snowden v. Southerton*, No. 22-CV-514, 2023 WL 3601654, at *7 (S.D.N.Y. May 23, 2023) (citation omitted); *see also Garrison v. Am. Sugar Refin., Inc.*, No. 21-CV-10917, 2022 WL 17850891, at *6 (S.D.N.Y. Dec. 22, 2022) (same).  In other words, "when a plaintiff experiences a 'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *King v. N. Amityville Fire Co., Inc.*, No. 19-CV-4643, 2023 WL 4827103, at *7 (E.D.N.Y. July 27, 2023) (alteration adopted) (quoting *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 211 (E.D.N.Y. 2014)); *see also Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) ("[T]he normal statute of limitations rules under Title VII do not apply where employees are hired or refused employment pursuant to a continuous practice and policy of discrimination." (alteration omitted) (internal quotation marks and citation omitted)).

For example, in *Guardians Association of the New York City Police Dep't, Inc. v. Civil Serv. Comm'n*, 633 F.2d 232 (2d Cir. 1980) ("*Guardians*"), the defendants administered written examinations, the results of which were "used in making appointments to the New York City

16

Police Department." *Id.* at 235.  Black and Hispanic police officers challenged the written

examinations, alleging that the examinations had a racially disparate impact.  *Id.*  The officers

did not file suit until New York City laid off over 2,500 officers pursuant to the police

department's "last-hired, first-fired" policy.  *Id.*  The officers alleged that, if not for the

discriminatory entry-level examinations, they "would have been hired earlier and thus would

have accrued sufficient seniority to withstand being fired."  *Id.* at 236.  There, the defendants

argued that "the 'operative' event in the hiring procedure under scrutiny . . . was the

promulgation of the eligibility lists reflecting the applicants' scores on the challenged exams."

*Id.* at 248.  The defendants, therefore, argued that "the fact that . . . the lists determined the order

in which all appointments were made constituted merely the non-actionable perpetuation of the

effects of past, non-actionable discrimination."  *Id.* at 249.  The Second Circuit disagreed,

concluding that "[t]hese refusals were not discrete acts; they were carried out pursuant to a

conceded and consistent policy."  *Id.* at 251.  In reaching this conclusion, the court explained that

by repeatedly utilizing the test results for years, defendants had "continued a course of

discriminatory conduct that . . . did not cease until defendants abandoned the practice of making

hiring decisions in this manner."  *Id.* at 249.

　　　　Similarly, in *Association Against Discrimination in Employment, Inc. v. City of

Bridgeport*, 647 F.2d 256 (2d Cir. 1981) ("*City of Bridgeport*"), the Second Circuit, relying in

part on *Guardians*, again applied the continuing violation theory to a city's policy of hiring from

allegedly discriminatory civil service examinations.  *Id.* at 274–75.  In addressing the period to

file a charge, the court stated that "[a]s a general matter, the mere continuation of a

discriminatory act's effects, when the act itself occurred prior to the pertinent limitations period,

is not sufficient to support recovery under Title VII."  *Id.* at 274.  However, the court explained

that "[w]here . . . the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation.  In such circumstances if the charge has been filed no later than 300 days after the last act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well." *Id.* (citing *Guardians*, 633 F.2d at 249); *see also Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978) ("A continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the last occurrence of an instance of that policy.  Furthermore, where an illegal policy is so maintained, relief for injuries sustained even before the beginning of the limitations period is appropriate." (internal citations omitted)).

Here, as in *Guardians* and *City of Bridgeport* — both of which have not been overruled by the Second Circuit, and therefore, are still good law — the Court concludes that the continuing violation doctrine squarely applies.  Defendants do not provide the Court with any basis to conclude otherwise.  Their reliance on *Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135 (2d Cir. 2012) and *United Probation Officers Association v. City of New York*, No. 21-CV-0218, 2022 WL 875864 (S.D.N.Y. Mar. 24, 2022) ("*United Probation*"), is unavailing.  In *Chin*, the Second Circuit held "that an employer's failure to promote is by its very nature a discrete act," such that every "[d]iscrete act[] of this sort, which fall[s] outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period.  *Chin*, 685 F.3d at 157.[3]  Similarly, in *United Probation Officers*, the court held that "[p]ay discrimination is a

---

[3] To the extent Defendants rely on *Chin* for the holding that the "pattern-or-practice method of proof is not available to nonclass, private plaintiffs," their reliance is misplaced.  The *Chin* court held as much with regard to a "theory of liability for discrimination." *Chin*, 685 F.3d at 147, 149.  In other words, the *Chin* court held that the pattern-or-practice method of proof, under which a Title VII plaintiff is required to prove only the existence of a discriminatory

discrete act that occurs each time an individual is paid wages that have been lowered as a result

of a discriminatory practice or decision," and therefore, "the continuing violation doctrine [was]

not available for" the plaintiffs' Title VII claims.  *United Probation Officers*, 2022 WL 875864,

at *5.  Both *Chin* and *United Probation Officers* are distinguishable because, unlike in those

cases where the courts identified discrete acts, Defendants' ongoing use of the discriminatory list

was not a discrete act cabined to a specific date.  Contrary to *Chin* and *United Probation*

*Officers*, there is evidence in the record that Defendants continuously relied, from 2015 to 2019,

on an eligibility list, promulgated on the basis of an allegedly discriminatory policy, resulting in

the refusal to hire Plaintiff.

　　　*Guardians* and *City of Bridgeport*, thus, are directly on point.  The Second Circuit, in

both of those cases, explicitly considered and rejected the proposition, embraced by Defendants

here, that the selection of candidates from a rank-order hiring list can be nothing more than the

effects of past discrimination.  *See City of Bridgeport*, 647 F.2d at 275 (recognizing that where

the defendant was engaged in a continuous violation, its most recent discriminatory acts "[could

not] be divorced from its earlier acts or its overall history"); *Guardians*, 633 F.3d at 251 ("[T]he

district court properly rejected the view that the department's discriminatory refusals to hire were

merely effects of earlier discriminatory conduct.").  The record in this case indisputably

demonstrates that Plaintiff was on the allegedly discriminatory eligibility list which was active

from 2015 to 2019 and from which Defendants hired at least until April 2018.  (Defs.' 56.1 ¶ 13;

Pl.'s 56.1 ¶ 13; Healey-Kagan Decl. Ex. 4.)  The continuous use of the eligibility list

---

policy rather than all elements of a prima facie case of discrimination, is not available to
nonclass, private plaintiffs.  Accordingly, Defendants' reliance on *Chin* for this proposition does
not bear on an individual plaintiff's ability to use the continuing violation doctrine to establish
timeliness of a charge of discrimination.

demonstrates an ongoing pattern of discrimination, as opposed to a single discriminatory act. *See City of Bridgeport*, 647 F.2d at 274 ("Where . . . the defendant has engaged in a continuous policy of discrimination, acts in furtherance of that policy are not viewed in isolation."); *see also Lyons*, 2022 WL 837202, at *11 (explaining that the continuing violation theory may be used "where there is evidence of specific discriminatory practices . . . and where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice" (internal quotation marks and citation omitted)); *Port Auth. Police Asian Jade Soc. of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 465–66 (S.D.N.Y. 2010) (explaining that the continuing violation doctrine applied, where Asian-American Port Authority officers sufficiently demonstrated that their employer's discriminatory policies related to promoting an officer to sergeant were part of an ongoing unlawful employment practice that amounted to a discriminatory policy or custom); *Selzer v. Bd. of Educ. of City of N.Y.*, 112 F.R.D. 176, 181–82 (S.D.N.Y. 1986) (holding that the plaintiffs alleged a continuing violation because they demonstrated that the defendants utilized "vague and subjective criteria" that "discriminated against women" in their "selection procedure for filling supervisory and administrative positions," which "facilitated the development of a sex discriminatory hiring pattern for principals and assistant principals").[4]

---

[4] Defendants contend in their Reply brief that because Plaintiff, in her Complaint, alleges that, "but for the Defendants' discriminatory hiring practices, Plaintiff would have begun her employment with [Defendants] on or about March 11, 2016," Plaintiff has identified March 2016 as the operative date from when the statute of limitations should be calculated. (Defs.' Reply at 3 (quoting Compl. ¶ 46) (alterations omitted).) The Court disagrees. The Court understands this statement to mean that the Plaintiff *could* have started working at the MVFD around that date, but for Defendants' discriminatory practices, as that date is around the time when Defendants first started hiring from the eligibility list created as a result of the 2014 exam. (Healey-Kagan Decl. Ex. 4.) However, Plaintiff could have also been hired subsequent to the March 2016 date because the eligibility list, from which the Defendants hired, was active from 2015 to 2019, and was utilized as late as April 2018. (*Id.*) For this reason, and all the reasons that the Court finds

Accordingly, because the alleged discrimination in this case is a continuing violation,

Plaintiff could file her charge within 300 days of the last act committed by Defendants pursuant

to the discriminatory policy and still satisfy the timeliness requirements.  *See Prude v. Logistics*

*One Transp., Inc.*, No. 20-CV-0674, 2022 WL 4120266, at *5 (N.D.N.Y. Sept. 9, 2022) ("Under

the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files

an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing

policy of discrimination, all claims of acts of discrimination under that policy will be timely even

if they would be untimely standing alone." (quoting *Patterson v. County of Oneida*, 375 F.3d

206, 220 (2d Cir. 2004))); *see also United States v. City of New York*, No. 07-CV-2067, 2009

WL 212154, at *7 (E.D.N.Y. Jan. 28, 2009) (applying the continuing violation theory to the

city's use of an allegedly discriminatory screening exam, and therefore, concluding that a charge

of discrimination was timely because it was filed before the city stopped making hiring decisions

based upon the exam).  Plaintiff filed her EEOC Charge on June 26, 2018, within sixty-seven

days of Defendants' last hiring decision based on the 2014 exam's resulting eligibility list, which

was made on April 20, 2018.  (Healey-Kagan Decl. Ex. 4 (listing at least eight male individuals

as being appointed on April 20, 2018; *see also id.* Ex. K (Plaintiff's EEOC Charge filed on June

26, 2018.)  Thus, the Court concludes that her Title VII claims are timely.

　　2. NYSHRL

Plaintiff's state-law claim is similarly not time barred.  The NYSHRL statute of

limitations is three years.  *See Islam v. Melisa*, No. 18-CV-2535, 2020 WL 1452463, at *8 n.7

(E.D.N.Y. Mar. 24, 2020) (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d

---

that the Defendants' alleged actions constitute a continuing violation, Plaintiff's statement does
not restrict Defendants' alleged discriminatory conduct to March 2016 or any other specific date.

Cir. 2007)); *see also Barba v. Data Centrum Commc'ns, Inc.*, No. 07-CV-2443, 2008 WL 563460, at *1 (S.D.N.Y. Feb. 26, 2008).  In addition, the continuing violation principles applicable to Title VII are also applicable to Plaintiff's NYSHRL claim.  *See Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 465 n.3 (S.D.N.Y. 2005) ("New York courts have embraced the continuing violation doctrine with respect to [NYS]HRL and NYCHRL claims.") (collecting New York State cases); *see also Lashley v. N.Y. Univ.*, No. 22-CV-1054, 2023 WL 6385724, at *3 (E.D.N.Y. Sept. 29, 2023) (acknowledging that the continuing violation doctrine could apply to NYSHRL claims); *Serrano v. N.Y. State Dep't of Env't Conservation*, No. 12-CV-1592, 2013 WL 6816787, at *12 (N.D.N.Y. Dec. 20, 2013) (same); *City of New York*, 2009 WL 212154, at *7 (same).  Here, because the Court has concluded that the continuing violation theory is applicable to the hiring practices at issue in this case in the context of Plaintiff's Title VII claim, the continuing violation doctrine is also applicable to Plaintiff's NYSHRL claim involving the same hiring practices.  These practices were ongoing and impacted Plaintiff at least as late as April 2018; therefore, the Court concludes that Plaintiff's NYSHRL claim is also timely.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is denied.  The Court will hold a telephonic status conference on December 1, 2023, at 11:30 AM.  The Clerk of Court is respectfully directed to terminate the pending motion, (Dkt. No. 51).

SO ORDERED.

Dated:  November 21, 2023
White Plains, New York

_____
KENNETH M. KARAS
United States District Judge