UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRITTANY MONTANA,

                              Plaintiff,

    v.

CITY OF MOUNT VERNON, *et al*.

                            Defendants.

No. 21-CV-260 (KMK)

OPINION & ORDER

---

Appearances:

Daniel J. Chavez, Esq.
Kennedys CMK LLP
New York, NY
*Counsel for Plaintiff*

Erica T. Kagan, Esq.
Filippatos PLLC
New York, NY
*Counsel for Plaintiff*

Marc S. Oxman, Esq.
Julie Pechersky, Esq.
Oxman Law Group, PLLC
White Plains, NY
*Counsel for Defendants*

Anthony Odorisi, Esq.
Brian G. Johnson, Esq.
City of Mount Vernon Law Department
Mt. Vernon, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Brittany Montana ("Montana" or "Plaintiff") brings this Action against the City of Mount Vernon and the City of Mount Vernon Fire Department ("MVFD") (collectively, "Defendants"), alleging discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, et seq., and the New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290, et seq. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Plaintiff's Motion for Summary Judgment (the "Motion"). (*See* Not. of Mot. (Dkt. No. 84).) For the following reasons, the Motion is denied.

## I. Background

### A. Factual Background

The following facts are taken from the Parties' statements pursuant to Local Rule 56.1, (*see* Pl. Rule 56.1 Stmt. ("Pl. 56.1") (Dkt. No. 85); Defs. Rep. Rule 56.1 Stmt. ("Defs. Rep. 56.1") (Dkt. No. 90)), and the admissible evidence submitted by the Parties. The facts are recounted "in the light most favorable to" Defendants, the non-movants. *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.

At the time of Plaintiff's application, applicants to MVFD were required to pass a written exam and a physical agility test before they could be considered for employment. (*See* Decl. of Erica Healy-Kagan ("Healy-Kagan Decl.") Ex. 8 ("Not. of Exam") 2–3 (Dkt. No. 87-8).) The written test was pass/fail. (*See* Not. of Exam 2.) If an applicant passed the written test, they were permitted to take the physical agility test. (*See id.* 3.) The physical agility test was composed of several tasks, some of which were pass/fail and some of which were timed. (*See id.*) Those with the highest scores (i.e., those who had the fastest times) on the agility test were

ranked highest on an "eligibility list." (*See* Decl. of Brian Johnson ("Johnson Decl.") Ex. 4 ("Beale Aff.") ¶¶ 8–11 (Dkt. No. 88-4).) The Civil Service Commission pulled its applicants to interview for open positions from the eligibility list in rank order. (*Id.*) Thus, the applicants who performed best on the agility test were most likely to be asked to interview for an open position. This testing structure was mandated by two consent decrees entered into by Defendants with the Department of Justice in 1981. *See generally Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dep't of City of White Plains*, 505 F. Supp. 955 (S.D.N.Y. 1981).

Plaintiff, who is a woman, (*see* Pl. 56.1 ¶ 1; Def. Rep. 56.1 ¶ 1), took the written exam on or about March 8, 2014, (*See* Beale Aff. ¶ 20). She passed the written examination and then took the physical agility test. (*See id.*) Based on her performance in the agility test, Plaintiff ranked 119th on the "eligibility list." (*See id.* ¶ 21.) That performance made her the highest scoring female on the examination, (*see* Pl. 56.1 ¶ 4; Def. Rep. 56.1 ¶ 4), but because she was not a top ranked candidate on the eligibility list, she was not interviewed for a position at MVFD, (*see* Pl. 56.1 ¶ 7; Def. Rep. 56.1 ¶ 7). The eligibility list remained in use from 2015 to 2019, (*see* Pl. 56.1 ¶ 3; Def. Rep. 56.1 ¶ 3), and no female firefighters were hired from that list, (*see* Pl. 56.1 ¶ 8; Def. Rep. 56.1 ¶ 8). In fact, MVFD has not hired a female firefighter in 25 years. (*See* Pl. 56.1 ¶ 10; Def. Rep. ¶ 10.)

On December 23, 2024, the United States moved to amend its consent decree with Mount Vernon, seeking to modify the decree to, inter alia, use a new physical exam called the Candidate Physical Ability Test ("CPAT"). *See* Mem. of L. to Approve Consent J., Vulcan Soc. of Westchester Cnty., Inc. v. Fire Dep't of City of White Plains, No. 80-CV-336 (S.D.N.Y. Dec. 23, 2024), Dkt. No. 284. On June 3, 2025, the court overseeing the consent decree adopted the proposed changes. (*See* Dkt. No. 93.)

B. Procedural Background

Plaintiff filed her Complaint on January 12, 2021. (*See* Compl.) On May 20, 2021, Defendants filed their Answer. (*See* Answer (Dkt. No. 12).) The Parties attempted to mediate on July 15, 2021, (*see* Dkt. Entry for July 15, 2021), after which they submitted a Joint Letter Motion to the Court, explaining that the continuation of mediation would be more productive after completing certain discovery, (Dkt No. 14). Accordingly, the Court entered a Case Management Order on September 17, 2021, (*see* Dkt. No. 22), and the Parties proceeded to discovery, (*see* Dkt. Nos. 30–57).

On February 9, 2022, the Parties submitted a Joint Letter Motion, requesting an extension of time to complete discovery given the "significant progress towards settlement[,]" which the Court granted. (Dkt. Nos. 23–24). On March 2, 2022, the Parties had a subsequent mediation conference, (*see* Dkt. Entry for Mar. 2, 2022), after which they submitted a Joint Letter Motion to the Court, seeking an adjournment of certain deadlines in the Case Management Order to continue discovery and to make progress towards settlement, (Dkt. No 25). The Court granted the extension but noted that there would be no further extensions of the discovery deadlines. (Dkt. No. 26.)

On April 24, 2023, while discovery was ongoing, Defendants filed a pre-motion letter to the Court requesting permission to move for summary judgment on the basis that Plaintiff failed to exhaust her administrative remedies, which the Court granted. (Dkt. Nos. 41–42.) The Parties briefed Defendants' Motion for Summary Judgment, (*see* Dkt. Nos. 51–57.) On November 21, 2023, the Court denied Defendants' Motion, (*see* Dkt. No. 75), and on July 2, 2024, the Court denied Defendants' Motion for Reconsideration, (*see* Dkt. No. 81).

On September 5, 2024, Plaintiff moved for Summary Judgment. (*See* Not. of Mot.; Pl. 56.1; Pl. Mem. of Law in Supp. of Mot. ("Pl. Mem.") (Dkt. No. 86); Healy-Kagan Decl.) On October 14, 2024, Defendants filed their Opposition. (*See* Johnson Decl.; Mem. of Law in Opp. to Mot. ("Def. Opp.") (Dkt. No. 89); Def. Rep. 56.1.) On November 18, 2024, Plaintiff filed her Reply. (*See* Pl. Rep. (Dkt. No. 91).)

On December 30, 2024, Plaintiff filed a letter with additional information pertaining to the consent decree. (*See* Dkt. No. 92.) On June 13, 2025, Plaintiff filed a letter notifying the Court that the proposed amendments to the Consent Decree had been adopted. (*See* Dkt. No. 93.)

## II. Discussion

### A. Standard of Review

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Galloway v. Cnty. of Nassau*, 141 F.4th 417, 422–23 (2d Cir. 2025) (quoting Fed. R. Civ. P. 56(a)). "In deciding whether to award summary judgment, the court must construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk County*, 17 F.4th 342, 354 (2d Cir. 2021); *see also Horror Inc. v. Miller*, 15 F.4th 232, 240 (2d Cir. 2021) ("When ruling on a summary judgment motion, the court construes the evidence before it in the light most favorable to the nonmoving party and resolves all ambiguities and draws all reasonable inferences against the moving party."). "It is the movant's burden to show that no genuine factual dispute exists." *Red Pocket, Inc. v. Interactive Commc'ns Int'l, Inc.*, No. 17-CV-5670, 2020 WL 838279, at *4 (S.D.N.Y. Feb. 20, 2020) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim," in which case "the non[-]moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration, citation, and quotation marks omitted).  Further, "[t]o survive a [summary judgment] motion . . . , [a non-movant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; [s]he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks omitted).  At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).  Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva*

*Pharms. Tech. Corp. v. Barr Laby's. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (quoting *Celotex*, 477 U.S. at 323–24).

When ruling on a motion for summary judgment, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge . . . ."); *Baity v. Kralik*, 51 F. Supp. 3d 414, 419 (S.D.N.Y. 2014) (disregarding "statements not based on [the] [p]laintiff's personal knowledge"); *Flaherty v. Filardi*, No. 03-CV-2167, 2007 WL 163112, at *5 (S.D.N.Y. Jan. 24, 2007) ("The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." (citation omitted)).

B. <u>Analysis</u>

Plaintiff asserts that Defendants' hiring practices—namely MVFD's testing policies—disproportionately impact female applicants in violation of Title VII and the NYSHRL. (*See* Pl. Mem. 6.)[1] Title VII and the NYSHRL prohibit "policies that are 'fair in form, but discriminatory

---

[1] Defendants note that the causes of action asserted in Plaintiff's Complaint only appear to spell out a disparate treatment theory of liability. (*See* Defs. Opp. 10–11 (citing Compl. ¶¶ 61–70).) While this may be true, other parts of the Complaint refer to a disparate impact theory of liability, (*see* Compl. ¶ 37), and Plaintiff "only move[s] for summary judgment on her disparate impact claims," (*see* Pl. Rep. 8). The Court therefore addresses only the viability of Plaintiff's disparate impact, not disparate treatment, claim.

7

in operation.'"[2] *Fitchett v. City of New York*, No. 18-CV-8144, 2021 WL 964972, at *21 (S.D.N.Y. Mar. 15, 2021) (quoting *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207 (2d Cir. 2020)). A disparate impact claim is subject to a three-part burden shifting analysis. *Id*. at *21 (citing *Gulino v. N.Y. St. Educ. Dep't*, 460 F.3d 361, 382 (2d Cir. 2006)). At the first stage, Plaintiff bears the burden of establishing a prima facie case of discrimination. *Id*. at *22. "Under Title VII, to make a prima facie showing of disparate impact, a plaintiff must '(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two.'" *Dowdy v. City of New York*, No. 22-CV-06284, 2025 WL 965084, at *10 (S.D.N.Y. Mar. 31, 2025) (italics omitted).

Generally, "[a]llegations which contend only that there is a bottom line [gender] imbalance in the work force are insufficient" to establish disparate impact. *United Prob. Officers Ass'n v. City of New York*, No. 21-CV-218, 2022 WL 875864, at *6 (S.D.N.Y. Mar. 24, 2022) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). Instead, "[s]tatistical *proof* is central to the showing of a prima facie case of disparate impact . . . ." *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-CV-6950, 2022 WL 814074, at *24 (S.D.N.Y. Mar. 17, 2022) (emphasis added) (italics omitted), *reconsidered on different grounds*, 2022 WL 3586460 (S.D.N.Y. Aug. 22, 2022); *see also Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir.2001) ("[S]tatistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim."). "Although there is no 'one test,' courts 'generally consider a significant disparity of two standard deviations sufficient to warrant an inference of

---

[2] Because the NYSHRL and Title VII are analyzed under the same standard, the Court's analysis applies to both of Plaintiff's claims. *See Burke v. Villa*, No. 19-CV-2957, 2021 WL 5591711, at *6 n.6 (E.D.N.Y. Nov. 30, 2021) ("Because the standards for evaluating the Title VII and NYSHRL claims are identical, the court analyzes them together.").

discrimination." *Fitchett*, 2021 WL 964972, at *23 (alterations adopted) (quoting *Malave v. Potter*, 320 F.3d 321, 327 (2d Cir. 2003)).

In the instant case, Plaintiff "has not come forward with a statistical analysis of any kind." *Id*. at *23. She has not demonstrated a statistically significant disparity in the hiring of women versus men based on the testing regime at issue. (*See generally* Pl. Mem.) Instead, she contends that the fact that MVFD has not hired a single woman in nearly 25 years is "a fact that by itself is sufficient to support an inference of discrimination." (*See id*. 7.) Although the Court is certainly troubled by the lack of women hired by MVFD, this fact, alone, demonstrates nothing more than a "bottom line [gender] imbalance," *United Prob. Officers Ass'n*, 2022 WL 875864, at *6, and is therefore insufficient to allow the Court to conclude that Defendants' testing practices violate Title VII and the NYSHRL as a matter of law, *see Hopkins v. Bridgeport Bd. of Educ.*, 834 F. Supp. 2d 58, 69 (D. Conn. 2011) ("[The p]laintiff has only demonstrated that at the bottom line there is a [gender] imbalance in the workforce which could be the result of any number of factors. Plaintiff has failed to provide evidence that links this bottom line imbalance to Defendant's purported practice or policy . . . .").

In defense of this lack of robust evidence, Plaintiff relies on the "inexorable zero" theory of liability. (*See* Pl. Mem. 7.) The "inexorable zero" theory arose in the context of *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), a disparate treatment case. *Id*. at 335. There, the Supreme Court rejected the defendant's attacks on the rigorousness of the plaintiff's statistical evidence of a pattern-and-practice of racial discrimination, noting that the "fine tuning of the statistics could not have obscured the glaring absence of minority line drivers." *Id*. at 342 n.23. Although the Supreme Court in *International Brotherhood of Teamsters* did not limit the reach of this theory to disparate treatment cases, its holding is in

9

some tension with the Supreme Court's later conclusion in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 647 (1989), where the Supreme Court held that evidence of bottom line underrepresentation alone could not suffice to make out a prima facie case of disparate impact, *see id*. at 657, because such a rule could "result in employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances in the composition of their work forces," *id*. (internal quotations and citations omitted). Applying the "inexorable zero" theory to a disparate impact claim permits bottom line underrepresentation to stand in for the kind of specific causal analysis that is ordinarily required of plaintiffs after *Wards Cove*.

In a case decided prior to *Wards Cove*, *Grant v. Bethlehem Steel Corp.,* 635 F.2d 1007 (2d Cir. 1980), the Second Circuit applied the "inexorable zero" theory to a disparate impact claim. *See id*. at 1015. In *Grant*, three ironworkers sued under Title VII, alleging, inter alia, that their employer's process of appointing foremen disparately impacted Black and Puerto Rican men. *See id*. at 1010–1011. Prior to the enactment of Title VII, Black people had been systematically excluded from joining the ironwork trade. *See Grant v. Bethlehem Steel Corp.*, No. 76-CV-847, 1978 WL 13833, at *1 (S.D.N.Y. Dec. 27, 1978), *rev'd*, 635 F.2d 1007 (2d Cir. 1980). Even after the enactment of Title VII, only one of a total of 126 ironworking foremen appointed between 1970 and 1975 was Black. *See id*. at *1. Foremen were appointed by white superintendents through a subjective, word-of-mouth process that mainly focused on the superintendent's relationship with the candidate. *See id*. at *2. Because of the systematic exclusion of Black ironworkers prior to 1970, Black ironworkers were less likely to have experience with the superintendents making foremen selections. *See id*. at *2. The plaintiffs argued this practice resulted in the statistically significant disparity in the appointment of foremen. *See id*. at *1. The district court ruled against the plaintiffs based, inter alia, on the

10

weakness of their statistical evidence. *See id*. at *3. On appeal, the Second Circuit vacated the district court's decision, holding that despite the "evidence of some weaknesses in the statistics" a disparate impact theory could nonetheless be maintained based on the "inexorable zero" theory. *See Grant*, 635 F.2d at 1015.

In a recent summary order, *Hernandez v. Office of Commissioner of Baseball*, No. 22-343, 2023 WL 5217876 (2d Cir. Aug. 15, 2023), the Second Circuit addressed the relationship between its holding in *Grant* and *Wards Cove*.[3] *See id*. at *4. In *Hernandez*, the plaintiff argued that Major League Baseball's ("MLB") promotion practices for crew chiefs resulted in a disparate impact on minority applicants. *See id*. at *1. The plaintiff relied on the "inexorable zero" theory as support for his prima facie case, and did not provide other statistical proof of causation. *See id*. at *3. The Second Circuit rejected the plaintiff's argument and upheld the district court's grant of summary judgment in favor of the defendant, concluding that the plaintiff failed to meet his burden of demonstrating the causal nexus between the challenged employment practice and the bottom line racial disparities at issue, as required by *Wards Cove*. *See id*. at *4–5. The Court also reaffirmed the centrality of statistical analysis in the ordinary disparate impact case, noting that the plaintiff's argument failed because he "failed to show that [a supervisor's]

---

[3] Though the Court analyzes the Second Circuit's decision in *Hernandez* in some detail, it only relies on *Hernandez* as persuasive, rather than precedential, authority. *See Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, No. 19-CV-11285, 2021 WL 4198332, at *19 n.22 (S.D.N.Y. Sept. 14, 2021) ("While summary orders do not have precedential effect, the Court is not at liberty to disregard or contradict 'a Second Circuit ruling squarely on point merely because it was rendered in a summary order' and rather should view such reasoning as '*valuable appellate guidance*.'" (emphasis added) (quoting *United States v. Tejada*, 824 F. Supp. 2d 473, 475 (S.D.N.Y. 2010))), *aff'd*, No. 21-2448, 2024 WL 1061142 (2d Cir. Mar. 12, 2024); *Arace v. Thompson*, No. 08-CV-7905, 2011 WL 3627716, at *3 (S.D.N.Y. Aug. 17, 2011) ("While *Federman* is only a summary order, and thus, according to the Second Circuit rules, lacking in precedential value, it is persuasive authority.").

use of the [challenged employment practice] created a *statistically significant* disparity between the promotion rates of white and minority umpires." *Id*. at *3 (emphasis added).

And while the Second Circuit acknowledged that it *had* relied on the "inexorable zero" theory in *Grant*, it noted that its more permissive causal analysis in that case was justified because "the employer based its promotion decisions 'solely on foreman experience' in the wake of 'past discriminatory hiring practices' that had excluded minority employees from the population of foremen," which "unquestionably served to perpetuate discrimination." *See id*. at *4. That is, the defendant's discriminatory past practices made it nearly certain that its facially neutral promotion policies would result in a disparate impact on minority applicants, and therefore the *Grant* court was justified in excusing the kind of statistical analysis ordinarily required of plaintiffs.

Here, the situation before the Court is more analogous to that in *Hernandez* than that in *Grant*. Plaintiff does not argue that a past discriminatory practice makes Defendant's facially neutral practices certain to have a discriminatory impact. (*See generally* Pl. Mem.) Instead, Plaintiff appears to allege that Defendant's recent physical testing regime, along with its method of prioritizing applicants based on those testing scores, systematically disadvantages women. (*See* Pl. Mem. 7 (arguing that the "exam Defendants use has a disparate impact on female applicants.").) This claim falls squarely within the ordinary universe of disparate impact cases, which require plaintiffs to "present statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants." *See Malave*, 320 F.3d at 326; *see also Chen-Oster*, 2022 WL 814074, at *24 ("Statistical proof is central to the showing of a prima facie case of disparate impact . . . ." (italics omitted)).

In effect, Plaintiff asks the Court to grant judgment in her favor based on an assumption that Defendants' testing regime causes the disparity in the hiring of women firefighters. But the Second Circuit has made clear that Plaintiff's burden is higher. *See Mandala*, 975 F.3d at 210 (2d Cir. 2020) ("At the prima facie stage, a plaintiff's statistical analysis must *demonstrate* that the disparity is substantial or significant and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity." (emphasis added) (alterations adopted) (internal quotations and citations omitted)); *Zdunski v. Erie 2-Chautauqua-Cattaraugus Boces*, No. 19-CV-940, 2022 WL 816010, at *10 (W.D.N.Y. Feb. 16, 2022) ("Although [the plaintiff] identified an employment practice allegedly responsible for disparate impact . . . he has not proffered any evidence showing how this employment practice had a disparate impact on members of his protected class"), *aff'd*, No. 22-CV-547, 2023 WL 2469827 (2d Cir. Mar. 13, 2023). Because Plaintiff has failed to proffer the required evidence, the Court is unable to grant summary judgment in her favor. *See Gittens-Bridges v. City of New York*, No. 19-CV-272, 2022 WL 954462, at *18 (S.D.N.Y. Mar. 30, 2022) (granting the defendants' summary judgment motion where the plaintiff failed to provide statistical evidence of disparate impact), *aff'd*, No. 22-810, 2023 WL 8825342 (2d Cir. Dec. 21, 2023); *LaBarbera v. NYU Winthrop Hosp.*, 527 F. Supp. 3d 275, 302 (E.D.N.Y. 2021) (granting summary judgment in favor of the defendants where the plaintiff had failed to provide statistical evidence of disparate impact).

III. Conclusion

For the foregoing reasons, Plaintiff's Motion is denied.[4] The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 84). The Court will hold a status conference on October 23, 2025 at 11 AM.

SO ORDERED.

Dated:  September 26, 2025
        White Plains, New York

KENNETH M. KARAS
United States District Judge

---

[4] Despite the fact that Defendants did not move for summary judgment, they appear to request that the Court grant summary judgment in their favor sua sponte. (*See* Defs. Opp. 21.) Under Rule 56(f), a court is permitted grant summary judgment in favor of the non-moving party "[a]fter giving notice and a reasonable time to respond." *See* Fed. R. Civ. P. 56(f)(1). Rule 56(f) codifies previously existing rules of practice. *Kowalchuck v. Metro. Transportation Auth.*, 94 F.4th 210, 215–16 (2d Cir. 2024). This rule is discretionary, "[h]owever, the Second Circuit has 'firmly discouraged the practice' of sua sponte grants of summary judgment." *Demonchaux v. Unitedhealthcare Oxford*, No. 10-CV-4491, 2012 WL 6700017, at *11 (S.D.N.Y. Dec. 20, 2012) (quoting *Bridgeway Corp. v. Citibank*, 201 F.3d 134, 139 (2d Cir.2000)).

Consistent with the Second Circuit's teachings on this issue, the Court declines to exercise its discretion in the instant case. Ordinarily, the Court requires pre-motion letters from each party, a conference, and full briefing before deciding on a motion for summary judgment. *See* Individual Rules of Practice of the Honorable Judge Karas §§ II.A–B. This briefing schedule sharpens the issues before the Court and allows each Party a full and fair opportunity to be heard. Given the complexity of the issues raised by Defendants in their Opposition, and the limited space Plaintiff was afforded in her Reply, the Court concludes that it would benefit from full briefing, and therefore denies Defendants' request pursuant to Rule 56(f). *See Kowalchuck*, 94 F.4th at 216 n.5 ("[The Second Circuit] concluded [in *Bridgeway*] that the party against whom summary judgment was granted was not prejudiced because the issues in question had been *fully briefed*." (emphasis added)); *Lodescar v. Denihan Hosp. Grp.*, No. 14-CV-8218, 2016 WL 11707673, at *5 (S.D.N.Y. Sept. 30, 2016) ("The Court declines to exercise this discretion and elects not to issue summary judgment in Plaintiff's favor sua sponte."); *Demonchaux*, 2012 WL 6700017, at *11 (rejecting non-movants' request that the Court grant summary judgment in their favor sua sponte).